Andrea M. Tytell, Esq., SBN: 166835
Gillian R. Domis, Esq., SBN: 333459
LAW OFFICES OF ANDREA M. TYTELL
1333 S. Pacific Coast Highway, Suite 204
Redondo Beach, California 90277
Telephone: (310) 416-9710
E-mail: lawher@msn.com

Attorney for Plaintiff, E.F., by and through her
Guardian ad Litem, Lucas Fiamengo

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STUDENT E.F. by and through her Guardian ad Litem, LUCAS FIAMENGO,<br><br>Plaintiffs,<br><br>vs.<br><br>PALOS VERDES PENINSULA UNIFIED SCHOOL DISTRICT,<br><br>Defendants. | CASE NO: 2:21-CV-04694<br><br>PLAINTIFF'S COMPLAINT FOR REVIEW DE NOVO OF SPECIAL EDUCATION DUE PROCESS HEARING DECISION ISSUED BY THE OFFICE OF ADMINISTRATIVE HEARINGS ON MARCH 11, 2021<br><br>DEMAND FOR JURY TRIAL |

## INTRODUCTION

1. Plaintiff, E.F. ("Student") by and through her Guardian ad Litem, Lucas Fiamengo hereby requests Review De Novo of a special education, administrative hearing decision issued by the Office of Administrative Hearings against Defendant Palos Verdes Peninsula Unified School District ("District","PVPUSD" or " Defendants").

2. This Review De Novo seeks an order (1) reversing the decision of the California Office of Administrative Hearings, ("OAH") dated March 11, 2021, in Case Number 2020070598. A copy of the OAH Decision is attached hereto as Exhibit A and incorporated herein by this reference. Secondly, Plaintiffs are asking this Court to grant appropriate relief under the Individuals with Disabilities Education Act (20 U.S.C. §§1415 et seq.) ("IDEA"), the

COMPLAINT FOR REVIEW DE NOVO OF SPECIAL EDUCATION ADMINISTRATIVE HEARING DECISION, VIOLATION OF ADA AND SECTION 504

1   Americans With Disabilities Education Act,42 U.S.C. §12203(a) and Section 504 of the Health and
2   Rehabilitation Act of 1973(29 U.S.C. §794). [1]

3        3. Pursuant to the IDEA, a parent may present a complaint concerning the identification,
4   evaluation, educational placement and services for a child with exceptional needs. IDEA
5   §1415(b)(6)(A). The purpose of the complaint is to ensure the child is the recipient of an in depth and
6   appropriate evaluation of their handicapping conditions and how such conditions affect the  child's
7   access to the mandated curriculum. The complaint can also seek available relief such as reimbursement
8   and compensatory education if the administrative tribunal finds that the district denied the child with
9   exceptional needs appropriate programming, and services, specifically designed to confer educational
10  benefit. IDEA §1415 as codified in CFR §300.304. CCR 303.321(b). The mandate of every school
11  district is to provide the child with exceptional needs a free and appropriate public education
12  ("FAPE") 20 U.S.C. §1401(3); Cal. Ed. Code §56026 . Parents also have the right to have the
13  disputes set forth in the complaint resolved through an impartial due process administrative hearing.
14  In compliance with the IDEA, the State of California, through the  California Department of
15  Educational ("CDE"), has established a due process hearing procedure conducted by OAH. 20 U.S.C.
16  §1415(b)(6); 34 CFR 300.507; EC 65601 and 56505(l))**.**

17        4. When a school district denies a child with exceptional needs a FAPE, the student is entitled
18  to appropriate relief under the IDEA. In this case, reasonable minds cannot differ  that the decision
19  rendered by OAH as to E.F. was not well reasoned in either fact or law. Accordingly, E.F. is entitled
20  to the relief sought in the underlying due process complaint. A true and correct copy of said complaint
21  is attached hereto and incorporated herein by this reference as Exhibit B.  The issues set forth in
22  Petitioner's  due process complaint were:

23  (1) Did PVPUSD deny Student a FAPE by failing to meet their Child Find Mandate from February
24  2017 to present ?

25  (2) Did PVPUSD deny Student a FAPE by failing to assess Student in all areas of suspected disability,
26  including ADHD and Autism from February 2017 until she was found eligible under the category of

27  _____

28        [1]Counsel for Plaintiffs  requested the transcripts from the administrative proceedings the day after the decision was
received. Despite many promises from OAH, at the time of this writing, the transcripts have not been prepared. Counsel
apologizes and will lodge the transcripts with this Court as soon as they are in hand.

1   Autism immediately after the hearing decision was rendered?

2   (3) Did the PVPUSD deny Student a FAPE by failing to adequately consider private assessments

3   presented to them on behalf of Student from February 2017 to present?

4   (4) Did PVPUSD deny Student a FAPE by failing to conduct legally sufficient assessments of

5   Student's needs in February 2020?

6   (5) Did PVPUSD's wrongful finding of eligibility under the category of emotional disturbance legally

7   oblige them to reimburse Student's Parents for the cost of Student's non-public school tuition and

8   transportation from November 1, 2018 until she was withdrawn at the end of the 2019-2020 academic

9   year?

10   (6) Did PVPUSD's failure to complete assessments for the IEP dated February 27, 2020 in the areas

11   of Autism and Assistive Technology a denial of FAPE?

12   (7) Did PVPUSD's failure to provide Student with a placement and services that enabled her to make

13   reasonable progress following the implementation of distance learning in response to the COVID-19

14   pandemic deny Student a FAPE and obligate PVPUSD to provide Student with compensatory

15   education.

16          5. Through this process, E.F. by and through her Guardian ad Litem seeks to not only request

17   a Review De Novo but to adjudicate E.F.'s rights under the Americans with Disabilities Act ("ADA"),

18   and Section 504 of Rehabilitation Act ("Section 504").

19          6. One of the threshold issues of this matter involves a written Stipulation between the parties

20   agreeing to toll the two year statute of limitations. Since tolling agreements are routinely granted and

21   honored by the Courts (because they reflect the good faith intentions of the parties and counsel), the

22   eradication of the tolling agreement by the administrative law judge is incomprehensible. The parties

23   agreed to toll the statute because they were collaborating and wished to conduct additional assessments

24   of E.F., hold another Individualized Educational Plan Meeting (hereinafter "IEP") and return to

25   mediation to explore other avenues of settlement prior to the due process hearing.

26                                          **THE PARTIES**

27          7. E.F. is a minor, now entering the seventh grade at Miraleste Middle School, which is within

28   the jurisdictional boundaries of the District. Her date of borth is July 27, 2008. E.F. is the only child

COMPLAINT FOR REVIEW DE NOVO OF SPECIAL EDUCATION ADMINISTRATIVE HEARING DECISION,
VIOLATION OF ADA AND SECTION 504

of the GAL and Kevin Gordon who are divorced and share both legal and physical custody. E.F. is equally bonded to both Parents and enjoys her time in their respective homes. Both the GAL and Kevin Gordon co-parent E.F. without acrimony or dissension. Each of them understands that E.F. requires calm, consistency, predictability and structure in order to be the best version of herself in both parent's homes and at school. E.F. has no real friendships and she is continually surprised that her imagined relationships at school do not translate into play dates or birthday party invitations. At school, she has been bullied and isolated for most of her academic career. At all times relating to this matter, E.F. and her Parents have resided in the County of Los Angeles, State of California.

8. E.F. had a very difficult beginning. She was born prematurely, had very low birth weight and hypotonia (low muscle tone). Her birth mother had no pre-natal care whatsoever. She was exposed to drugs and alcohol while in the womb which translated into pre-natal addiction and severe delay in most of her developmental milestones. E.F. is very small in stature and takes growth hormones via injection on a daily basis. She has always experienced difficulty accessing the curriculum and understanding both receptive and expressive language. She has no capacity to understand non-verbal language. All of these signs and symptoms of Autism have been present during the entirety of her academic tenure in PVPUSD. For years, E.F.'s Parents urged the District to evaluate E.F. for Autism in order that she may receive services designed to ameliorate the manifestations of Autism which Parents knew was impacting her overall functioning in every aspect of her daily life.

9. E.F. also struggles with ADHD, specifically maintaining attention, holding on to mental facts, and operations that should enable her to learn and process language and math. E.F. simply cannot multi-task when required to blend two skills from different subjects. She has little to no executive functioning and perhaps her most pervasive deficits are site word reading, phonemic awareness and reading comprehension. Despite her physical maturation, E.F. acts far younger than her stated age. She is very naive, immature and juvenile. She overcompensates for her deficits by twirling, dancing, singing and acting overly gregarious. Without question, she acts in this manner to deflect others from noticing her differences, yet she remains oblivious that most of her peers do not conduct themselves as she does.

10. Defendant Palos Verdes Peninsula Unified School District is a governmental agency, duly

4

1  organized and existing pursuant to the laws of the State of California. District is located in Los
2  Angeles County, California, and is a Local Education Agency ("LEA") within the meaning of the
3  IDEA. PVPUSD is a recipient of federal financial assistance for purposes of the IDEA. At all times
4  relevant, PVPUSD was and is the LEA responsible for providing to E.F. a FAPE within the meaning
5  of the IDEA. PVPUSD is governed by the laws of the state of California, the laws of the United States,
6  and the Constitution of the United States in carrying out its duties and responsibilities to children with
7  special needs like E.F..

8  <center>**JURISDICTION AND VENUE**</center>

9      11. This action arises under the IDEA. Jurisdiction is conferred on this Court pursuant to 20
10 U.S.C. §1415 and 28 U.S.C. §1331. Pursuant to 20 U.S.C. §1415(i)(3)(A), the District Court's
11 jurisdiction in this matter is without regard to the amount in controversy.

12     12. Venue is proper in this Court under 28 U.S.C. §1391(b). Student and Parents all
13 reside within the Central District of California, and Defendant is located in, and conducts its
14 business as a governmental, educational agency there as well. All of the events set forth herein
15 took place in the Central District of California.

16     13. Administrative remedies under the Individuals with Disabilities Education
17 Improvement Act of 2004 ("IDEA") have been exhausted. Petitioners also satisfied any and
18 all duties to seek exhaustion of their remedies as to their claims under the ADA, Section 504.

19 <center>**STANDARD OF REVIEW**</center>

20     14. In evaluating a case filed under IDEA, the District Court "shall receive the records
21 of the [state] administrative proceedings, shall hear additional evidence at the request of a
22 party, and basing its decision on the preponderance of the evidence, shall grant such relief as
23 the Court determines is appropriate." 20 U.S.C. §1415(e)(2). The District Court proceeding "under
24 the IDEA is a hybrid, akin to a trial de novo." *Union School District v. Smith,* 15 F.3d 1519, 1524 (9th
25 Cir. 1994).

26     15. Although the District Court is required to give "due weight" to the decision of the ALJ, the
27 "Court must ultimately reach an independent decision based on a preponderance of the evidence.
28 *Board of Education v. Rowly,* 458 U.S. 176, 205 (1982) ("Congress intended 'judicial review in IDEA

<center>5</center>

1   cases to differ ... substantially from judicial review of other agency actions in which Courts are

2   generally confined to the administrative record and are held to a highly deferential standard of

3   review.'" *Amanda J. v. Clark County School District,* 260 F.3d 1106 (9th Cir.2001) (*quoting Ojai*

4   *Unified School District v. Jackson,* 4 F.3d 1467, 1471 (9th Cir. 1993)).

5          16.The reviewing Court must determine whether the school district met the legal requirements

6   of IDEA, looking to the very specific facts of the particulat case at hand. *San Rafael Elementary*

7   *School District v. California Special Education Hearing Office,* 482 F.Supp.2d 1152, 219 Ed. Law

8   Rep. 676 (N.D. Cal. 2007).

9                              **STATEMENT OF FACTS**

10          17. Plaintiff, E.F. is a child with a disability within the meaning of the IDEA and has been

11   determined by PVPUSD to be eligible for special education and related services under the category

12   of Other Health Impairment, Emotional Disturbance and finally, after the ALJ's decision in this matter,

13   Autism. PVPUSD determined Student to be eligible for special education services on January 26,

14   2016. Respondent t is required to provide Student with a free and appropriate public education

15   ("FAPE") as defined under 20 U.S.C. §1401(9).

16          18. Petitioners filed their Due Process Complaint against PVPUSD on July 22, 2020,

17   asserting the issues set forth in paragraph four (4) herein.

18          19. A Due Process Hearing was held in OAH Case No.2020070598 on December 16,

19   17, and 22, 2020, January 11, 19, 20, 21, and 26, 2021.  OAH issued its decision on March 11,

20   2021, ruling that PVPUSD prevailed on all issues.

21          20.The determinations in favor of PVPUSD included findings that : (1) Student did not

22   prove the statutory exceptions to the statute of limitations (tolling ageement) apply; (2)

23   PVPUSD  did not misrepresent it had resolved a problem forming the basis of the complaint;

24   (3) PVPUSD did not withhold statutorily required information from Parents; (4) PVPUSD

25   satisfied its "Child Find" mandate; (5) PVPUSD appropriately assessed Student in the areas

26   of Attention Deficit Hyperactivity Disorder and Autism; (6) PVPUSD conducted legally

27   sufficient assessments of Student in preparation for the February 2020 IEP team meeting; (7)

28   PVPUSD's Academic Assessment was appropriate; (8) PVPUSD's Occupational Therapy

1   Assessment was appropriate;(9)PVPUSD's Speech and Language Assessment was appropriate;
2   and (10) PVPUSD'S Psychoeducational Assessment was appropriate.

3          21. Despite all of the technical difficulties and delays with the virtual format during the
4   hearing, it was evident to Petitioners and their counsel that the ALJ was tired, "checked out"
5   and not paying attention to their evidence (see infra). From the outset, it was obvious that the
6   ALJ was bothered by the case for one reason or the other. Stating any one specific reason
7   would be inappropriate as Plaintiff's comments and beliefs would be mere supposition.
8   However, the ALJ's body language, disinterested demeanor and lack of interest in Plaintiff's
9   witnesses, made it evident from the inception of the testimony that she intended to find in favor
10  of the District. The ALJ deferred ruling on the tolling agreement until after all of the evidence
11  was submitted. As a result, Plaintiffs' were forced to put on a longer case to include the time
12  period covered by the tolling agreement. A true and correct copy of said tolling agreement is
13  attached hereto and incorporated herein by this reference as Exhibit C. In order to sustain the
14  tolling agreement, the law requires Plaintiffs to prove two key components, specifically, 1) that
15  PVPUSD engaged in any misrepresentations and 2) that PVPUSD withheld information about
16  E.F.'s true abilities and limitations. A comprehensive discussion of these prongs is contained
17  in Plaintiff's Closing Brief beginning at page 3 and concluding at page 7. A true and correct
18  copy of Plaintiff's Closing Brief is attached hereto and incorporated herein by this reference
19  as Exhibit D.

20         22. Plaintiff's witnesses have impeccable credentials and are well respected for their
21  acumen and knowledge. One such witness is a well-established pediatric neurologist who is
22  a highly competent and sought after expert in Autism. This neurologist has practiced for many
23  years, is published and deemed one of the foremost experts in child neurology.This medical
24  doctor diagnosed E.F. with Autism on September 11, 2018 and wrote a letter to the IEP team,
25  specifying her diagnosis. Her diagnosis was then confirmed by a licensed educational
26  psychologist with more than forty (40) years experience who administered several rating scales
27  and psychometric measures which confirmed the diagnosis of Autism. That information was
28  also brought before the IEP team in 2018. Despite this, the ALJ accepted the poorly reasoned

1  and improperly scored paper and pencil analysis of a newly licensed school psychologist over
2  the well reasoned and reliable diagnoses of Plaintiff's qualified medical and psychological
3  witnesses.

4      23. The irony in all of this occurred when PVPUSD recognized that E.F. does in fact
5  have Autism and is in great need of appropriate programming and services to compensate for
6  all of the interventions she required for so many years. That occurred on March 23, 2021, after
7  the due process hearing and after the ALJ rendered her decision. Autism is not a condition that
8  develops overnight. It is a pervasive, developmental disorder which encompasses all of E.F.'s
9  delays and deficits. PVPUSD knew about E.F.'s complicated birth history and her long and
10  difficult struggles with communication difficulties. Despite this, they would not agree she met
11  the criteria for Autism until after the hearing decision was rendered.

12      24. Parents level of frustration with PVPSD caused them to withdraw E.F. from the
13  District and place her in a non-public school where she could receive one on one, direct
14  instruction. While there, she made some strides, however, E.F. did not return to the non-public
15  school due to the pandemic. The non-public school was only offering distance learning which
16  was proven to be very difficult for E.F, who cannot pay attention to any kind of asynchronis
17  learning methodology. She simply turned off her camera and refused to engage. E.F. re-
18  enrolled in PVPUSD and for more than one year, was unable to access the core curriculum via
19  distance learning.

20      25. Prior to enrolling E.F. in the non-public school, E.F. was struggling more than ever.
21  however, Plaintiff's proved that PVPUSD's evaluation of her academic skills was inflated and
22  fraudulent. The truth is that E.F. was given a one:one aide who was doing all of her work.
23  When E.F. began the non-public school, the principal testified that "she could not read or
24  write". Yet, PVPUSD reported that her skills were mostly in the average range. A PVPUSD
25  evaluation after E.F.had been attending the non-public school made it appear that E.F. was
26  plummeting. A true and correct copy of a graph submitted with Plaintiff's Closing Brief is
27  attached hereto and incorporated herein by this reference as Exhibit D. If, as PVPUSD
28  maintains, she was approaching the average range in her academic skills when she left the

8

1   District, it follows that one:one , direct instruction would have kept her on the same trajectory.
2   Absent a head injury or severe illness, the trends evidenced on the attached graph cannot be
3   deemed reliable.. These issues are thoroughly discussed throughout Plaintiff's Closing Brief
4   and fully equate to the issues set forth in Plaintiff's Due Process Complaint (See paragraph
5   four (4) herein).

6       26. Notwithstanding the uncontroverted evidence, the ALJ utterly disregarded the
7   provisions of the IDEA, which requires PVPUSD  to make FAPE available to a student with
8   a disability, and to provide an appropriate offer of placement *prior* to the start of a school year.

9                          **FIRST CLAIM FOR RELIEF**
10                         **VIOLATION OF CHILD FIND**
11                            **34 CFR §300.111**

12      27. Plaintiffs reallege and reincorporate each and every allegation contained in
13   paragraphs 1 through 26 as though fully set forth herein.

14      28. The Child Find requirement of the *Individuals with Disabilities Education Act,* 20
15   U.S.C. §1412(a); 34 CFR 300.111 require that every state effectuate policies and procedures
16   to insure that all children with disabilities residing within the state, regardless of the severity
17   of their disabilities and who are in need or special education and related services are
18   "identified, located and evaluated."

19      29. Given the federal and state mandates, the District had an affirmative duty to seek
20   out and find the source of Student's difficulties and impediments. Additionally, the District had
21   an affirmative duty to property identify and serve Student in a meaningful way, designed to
22   confer educational benefit. Instead, the District downplayed Student's difficulties while
23   inflating her performance to create the appearance that she had the ability to access grade level
24   curriculum.

25      30. As the educational professionals, District personnel should have known that
26   Student's Parents and privately retained educational professionals were seeking assistance to
27   help E.F. and that their requests were made in good faith, after hours of evaluation and
28   observation. Student's IEP as written was wholly insufficient to address Student's declining

skills in both academic and social domains. What's more, as soon as Parents hired counsel, PVPUSD brought a one:one classroom aide to the classroom to work exclusively with E.F. The IEP never reflected the addition of the one:one aide. The only thing reflected on the IEP was a classroom aide who was supposed to float within the classroom and help students who needed more assistance. It was later determined that the one:one aide was working exclusively with E.F, and doing most all of her required work. Plaintiffs are informed, believe and thereon allege that the impetus for the one:one aide was to create the appearance that E.F. was actually able to access the mandated curriculum. To substantiate this belief, when E.F. began attending the non-public school, there is significant proof that she was unable to read or write. There was testimony about this matter from the Principal of the non-public school, Shelia Zaft (Plaintiffs will cite to the hearing transcript about this testimony once it is received from OAH).

31. As of March 2021, Autism became E.F.'s primary handicapping condition. Had E.F. been offered programming and services necessitated by her true disability and the manifestations thereof, without question, her ability to access the curriculum would be far more advanced than they are now. he District's successive delays and lack of acknowledgment are precisely why Student struggled throughout her entire academic career.

32. The ALJ erroneously determined that PVPUSD satisfied its Child Find mandate during the relevant statutory period. For years, theDistrict recommended special education eligibility under the categories of Other Health Impairment. When that proved to be incorrect, they tried and Emotional Disturbance even though Autism was and is her primary handicapping condition which was identified and shared with PVPUSD in 2018.For these reasons, the ALJ's refusal to determine there were Child Find violations is incorrect and inconsistent with the evidence presented during the entirety of the hearing.

## SECOND CLAIM FOR RELIEF

### FAILURE TO ASSESS IN ALL AREAS OF SUSPECTED DISABILITY

### 34 CFR §300.304

33. Plaintiffs reallege and reincorrorate each and every allegation contained in paragraphs 1 through 32 as though fully set forth herein.

34. 34 CFR Section 300.304 requires that the child be assessed in all areas related to the suspected disability, including, if appropriate, health, vision, hearing, social and emotional status, general intelligence, academic performance, communicative status and motor abilities.

35. Under these facts, no reasonable minds can differ but that the District failed to assess in all areas of suspected disability, most essentially, Autism.

36. Student is afflicted with Autism, ADHD, an Auditory Processing Disorder, Generalized Anxiety Disorder and Executive Functioning Deficits. These concerns were addressed by Parents and communicated to the District multiple times. However, it was not until 2014 that the District held an initial meeting to determine the scope of E.F.'s needs. Then, it was not until November 2015 that an Initial Assessment Plan was offered, and not until January 2016 that an Initial IEP was held where E.F. Was finally determined to have eligibility under the category of Other Health Impairment .

37. During the initial assessments, PVPUSD expressly ruled out Specific Learning Disability and Autism as eligibility categories. PVPUSD adamantly expressed that Student's eligibility was correct and claimed grrat success based upon the programming and services they were offering. The feigned success was short lived as E.F. could not remember how to doi her work from one day to the next.

38. PVPUSD's failure to recognize and acknowledge the ineffective assistance of E.F.'s IEP is a clear violation of their obligation to assess Student in all areas of suspected disability.

39. The ALJ erroneously determined that PVPUSD appropriately assessed Student in the areas of Attention Deficit Hyperactivity Disorder and Autism. If this were true, then the PVPUSD would have undoubtedly realized how wholly inadequate and inappropriate Student's IEP was to address the nature and severity of her well documented needs and lack of response to intervention allegedly provided by the District.

## THIRD CLAIM FOR RELIEF

### DENIAL OF FAPE

### 34 CFR §300.17

40. Plaintiffs reallege and reincorprorate each and every allegation contained in

1  paragraphs 1 through 39 as though fully set forth herein.

2      41. Federal and State laws guarantee a child with a disability the right to a FAPE that

3  includes an IEP tailored to the child's unique needs. 20 U.S.C. §1401(3); Cal. Ed. Code

4  §56026.

5      42. A school District is required to perform a careful evaluation to determine the

6  educational needs of the child. 20 U.S.C. §1414(c)(1); Cal. Ed. Code §56381(h).

7      43. The IDEA guarantees students with disabilities the right to receive a FAPE and

8  Parents and their designees the right to meaningful participation in meetings related to Student

9  receiving a FAPE. 20 U.S.C. §§1401(9) and 1412(a)(1)(A); 34 CFR §§300.17 and 300.101 as

10  well as Cal. Ed. Code §§56000 and 56040(a).

11      44. Additionally, school Districts are obligated to provide services to enable students

12  with disabilities to advance towards appropriate goals and participate in and benefit from the

13  general education environment. 20 U.S.C. §1414(d)(1)(A)(i)(IV) and Cal. Ed. Code.

14  §56345(a)(4). The failure to provide such services is a denial of FAPE.

15      45. The IDEA defines a free appropriate public education as "special education and

16  related services that (A) have been provided at public expense, under public supervision and

17  direction, and without charge; (B) meet the standards of the state educational agency; (C)

18  include an appropriate preschool, elementary school or secondary school education in the state

19  involved; and (D) are provided in conformity with the individualized education program

20  required under Section 1414(d)." 20 U.S.C. §1401(9).

21      46. Here, the District failed to offer and provide E.F. with a FAPE by failing to develop

22  a substantively appropriate program designed to meet her unique needs and to provide

23  educational benefit to E.F. within the mandate of the law. E.F. was not properly evaluated and

24  her abilities were exaggerated in a fraudulent manner. PVPUSD paid no attention to the

25  evaluations of qualified professionals and the AIJ's decision reinforced their malfeasance.

26      47. PVPUSD failed to offer an appropriate educational placement that provided E.F.

27  with sufficiently challenging curriculum with differentiated instruction, and involvement in a

28  classroom with appropriate social communication models.

48. The ALJ erroneously determined that District had offered E.F. an appropriate program, including appropriate placement. The ALJ failed to base her decision on competent evidence, including testimony and documentary evidence, which demonstrated that the placements offered by PVPUSD would not be appropriate to meet E.F.'s unique needs and provide her with educational benefit.

49. Competent, relevant and uncontroverted evidence supported a finding that E.F. requires placement in an appropriate educational environment within a specialized program with staff trained and experienced in working with students who have Autism. E.F. requires a challenging academic curriculum, differentiated instruction with ongoing facilitation of social skills, peer interactions, and small class sizes.

50. Because of the successive failures to serve E.F. PVPUSD's proposed program of a specialized day class for English, Language Arts and Math classes, with minor additions of goals in the areas of executive functioning and task completion, as contained in the October 15 and November 12, 2020 IEPs does not constitute a free and appropriate public edutcation, designed specifically to meet E.F's unique needs. Without question, PVPUSD failed to consider E.F.'s unique needs, failed to provide E.F. a program that would provide her educational benefit, and failed to identify any specific placement that would be appropriate for E.F. where she could be taught methods and strategies to overcome and retain her documented academic, social and emotional deficits.

51. Accordingly, the ALJ erroneously determined that PVPUSD provided Student with a FAPE.

## FORTH CLAIM FOR RELIEF

## VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT

### 42 U.S.C. §§12131-34

52. Plaintiffs reallege and reincorporate each and every allegation contained in paragraphs 1 through 51 as though fully set forth herein.

53. The ADA guarantees non-discriminatory access to not only "the services, programs, or activities" of any "public entity," 42 U.S.C. §12132, but also to commercial facilities and

1  places of public accommodation, *id* §§12181-84.

2      54. Under the ADA, children with disabilities also must be given reasonable

3  accommodations so they can "access" the school program at all - i.e., to ensure they are not

4  excluded from school or the classroom and, as a result, denied the opportunity to obtain the

5  individualized attention necessary to receive an appropriate public education.

6      55. Here, PVPUSD failed to recognize that a Specialized Day Class was a wholly

7  inappropriate and inadequate environment for Student given the complexity and severity of

8  her well documented handicapping conditions. E.F. was not receiving immediate feedback in

9  the Specialized Day Class. Instead, her grades were being inflated, and Parents were offered

10  fraudulent reports of progress that were wholly inconsistent with Student's capabilities. .

11      56. As detailed above, Student required a small student to teacher ratio, immediate

12  feedback and opportunities for direct instruction. To substantiate their inflated progress reports,

13  PVPUSD refused to inclrease the frequency and type of service that E.F. actually required.

14  Student required a curriculum based upon the whole child and not just one segment of that

15  child's needs.

16      57. Therefore, by refusing to recognize that Student was unable to access the school

17  program in District's Specialized Day Class, the District failed to provide reasonable

18  accommodations to Student, thereby denying Student the opportunity to obtain the

19  individualized attention she required to receive an appropriate public education. As a result of

20  these actions, the District violated the ADA.

21  <div align="center">**FIFTH CLAIM FOR RELIEF**</div>

22  <div align="center">**VIOLATION OF SECTION 504 OF THE HEALTH**</div>

23  <div align="center">**AND REHABILITATION ACT OF 1973**</div>

24  <div align="center">**29 U.S.C. §794**</div>

25      58. Plaintiffs reallege and reincorporate each and every allegation contained in

26  paragraphs 1 through 57 as though fully set forth herein.

27      59. Section 504 guarantees nondiscriminatory access to federally funded activities and

28  programs, 29 U.S.C. §794, and it requires public entities to make "reasonable modifications"

1  to their practices to "accommodate" individuals with disabilities. *See Alexander v. Choate,*
2  469, U.S. 287, 300 (1985).

3      60. Here, the PVPUSD refused to make reasonable modifications to Student's IEP, even
4  when it should have been clear that, as written, Student's IEP was not allowing her to advance
5  in the academic curriculum. E.F. clearly required proper identification as a Student with
6  Autism along with specialized instruction and accommodation designed to ameliorate her
7  deficits.

8      61. Instead, PVPUSD remained steadfast that their offer of a free and appropriate public
9  education which was based upon erroneous assessment data and false reporting of E.F.'s
10  progress.

11     62. By failing to recognize and offer to make reasonable modifications to Student's IEP,
12  her eligibility, her services and accommodations, PVPUSD violated Section 504 of the Health
13  and Rehabilitation Act of 1973.

14                          **SIXTH CLAIM FOR RELIEF**

15                  **EQUITABLE AND COMPENSATORY RELIEF**

16     63. Plaintiffs reallege and reincorporate each and every allegation contained in
17  paragraphs 1 through 62 as though fully set forth herein.

18     64. The ALJ erred as a matter of law in failing to apply appropriate legal standards
19  regarding equitable considerations, and abused her discretion in failing to find that the equities
20  of this case weighed in favor of providing reimbursement to Plaintiffs.

21     65. Reimbursement remedies are part of the court's resources in crafting "appropriate
22  relief" under the IDEA, and therefore, equitable considerations are relevant. *See Sch. Comm,*
23  *of the Town of Burlington v. Dept. of Educ.,* 471 U.S. 359. 374 (1985).

24     66. The ALJ failed to consider equitable considerations as a relevant factor in resolving
25  the issue of whether Parents were entitled to reimbursement for placement a tE.F's_ npn -
26  public school. The totality of evidence in this matter included such factors as the effort
27  expended by Parents in seeking information about appropriate placements, the cooperation of
28  Parents in the IEP process, the failure of the District to take timely steps towards identifying

1   an appropriate eligibility, program and placement, and the failure of the District to follow its

2   own policies.

3       67. As a direct result of her failure to consider the totality of the evidence presented and

4   to weigh the equities, the ALJ did not, and could not, offer any legal authority to support her

5   decision not to reimburse Parents for the placement of E.F. and did not, could not, identify

6   what legal alternatives existed for Parents at the start of the school year since no appropriate

7   educational placement had been identified or offered.

8       68. The ALJ's (A) failure to consider the totality of the evidence presented and to weigh

9   the equitable considerations in this matter, and (B) failure to offer any legal authority to

10  support her decision not to reimburse Parents, directly resulted in an abuse of discretion and

11  requires reversal by this Court.

## PRAYER FOR RELIEF

12

13  **WHEREFORE,** PLAINTIFFS PRAY FOR THE FOLLOWING RELIEF:

14      1. This Court enter an Order requiring the administrative record, including Exhibits,

15  Transcripts, Briefs, Pleadings and the ALJ's Decision, to be lodged with this Court;

16      2. Plaintiffs' be permitted to augment the record if deemed appropriate and assistive

17  to this Court;

18      3. The decision of the ALJ rendered on March 11, 2021 be reversed in totality;

19      4. Reimbursement to Plaintiffs for their well documented, educationally necessary

20  expenses, according to proof at the time of hearing;

21      5. Compensatory education for E.F. in the form of tutoring and/or educational therapy

22  in an amount according to proof at the time of hearing;

23      6. Attorneys fees according to proof;

24      7. Any other and such relief as this Court deems just and appropriate.

25  Dated: June 8, 2021                          Respectfully submitted,

26

27

28                                              Andrea M. Tytell,
                                                Attorney for Petitioners

COMPLAINT FOR REVIEW DE NOVO OF SPECIAL EDUCATION ADMINISTRATIVE HEARING DECISION,
VIOLATION OF ADA AND SECTION 504